UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILBERT THOMAS,<br><br>    Plaintiff,<br><br>v.<br><br>R. PASHILK, et al.,<br><br>    Defendants. | Case No. 22-cv-01778-JSC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION FOR "DECREE"**<br><br>Re: Dkt. Nos. 63, 78 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding without attorney representation, filed this civil rights complaint under 42 U.S.C. § 1983. The amended complaint (ECF No. 9) is the operative complaint. The remaining Defendants are three officials at San Quentin State Prison ("SQSP"): R. Pashilk, R. Feston, and D. Campbell.[1] Defendants filed a motion for summary judgment (ECF No. 63), Plaintiff opposed (ECF No. 69), and Defendants replied (ECF No. 73). For the reasons discussed below, the motion for summary judgment is GRANTED, and Plaintiff's motion for a "decree" (ECF No. 78) is DENIED.

## BACKGROUND

On April 1, 2021, Defendant Pashilk, an officer in SQSP's Investigative Services Unit, opened Plaintiff's mail outside of Plaintiff's presence and without Plaintiff's knowledge or consent. (ECF No. 9 at 10.) The mail was labeled "legal mail," had a handwritten return address stating, "William L. Schmidt, Attorney at Law," and did not have any damage or discoloration. (*Id.*)

---

[1] Unless otherwise specified, these Defendants are referred to as "Defendants." The claims against the other Defendants (Warden Oak Smith, Captain E. Sanders, and Captain E. Patao) were dismissed with further leave to amend and later dismissed altogether because Plaintiff indicated he did not wish to further amend the allegations against them. (*See* ECF Nos. 32, 35, 42.)

Pashilk, who had received training in identifying the introduction of contraband into the prison system, was nonetheless suspicious because "it did not contain an authentic legal mail stamp, identifying it as confidential legal mail," the handwriting on the envelope "was not consistent with an attorney's handwriting," and Plaintiff had a history of receiving methamphetamine through the prison mail. (ECF No. 63-3 at ¶¶ 3-8.) The envelope contained a blank federal tax form that was "discolored and splotchy" with a "'crusty' texture, consistent with being infused with methamphetamine." (*Id.* at ¶ 10.) A field test and subsequent forensic testing in the lab of the paper yielded positive result for methamphetamine. (*Id.* at ¶ 11-13.) Pashilk found no other mail inside the package. (ECF No. 63-9 at 8.) Pashilk called the return addressee, William Schmidt, who stated he never represented Plaintiff, did not know him, and did not send the mail to him. (ECF No. 63-3 at ¶ 16.) Plaintiff also testified at his deposition he did not know Mr. Schmidt, and he had never been his attorney. (ECF No. 63-2 at 7-8.)

Pashilk issued a Rules Violation Report ("RVR"), number 7086972, on May 13, 2021, for introduction of contraband into the prison. (ECF Nos. 63-3 at ¶ 14; 9 at 11.) Plaintiff received the RVR on May 17, 2021, and Defendant Feston was the Senior Hearing Officer at the disciplinary hearing on June 2, 2021. (ECF Nos. 63-5; 69 at 16:17-18.) Feston found Plaintiff guilty and imposed a variety of penalties, including the loss of time credits,[2] loss of work pay, loss of canteen and other privileges, and mandatory drug testing. (ECF No. 9 at 12; ECF Nos. 63-4 at ¶¶ 4, 7; 63-5.) Plaintiff received the RVR and notice of the hearing 16 days before the hearing, was allowed to call witnesses (which he did not do), and received a written explanation of the reasons and evidence for the disciplinary decision. (ECF Nos. 63-4 at ¶¶ 4-5; 63-5.) He was also provided a staff assistant and an investigative employee, and an assessment was made whether he would need accommodations for disabilities or mental health issues. (ECF No. 63-5.)

Plaintiff filed an administrative grievance complaining about Pashilk's conduct, and on November 10, 2021, the appeal officer found Pashilk violated prison regulations by opening the

---

[2] Because Plaintiff is a condemned inmate, his loss of time credits were never assessed. (ECF No. 63-4 at ¶ 8.)

1   mail without Plaintiff being present.[3]  (ECF No. 69-3 at 13.)  This decision also ordered review of

2   Plaintiff's disciplinary finding to occur separately (*id.*), and on December 7, 2021, Lieutenant

3   Bravo ordered the RVR reissued and reheard.  (ECF No. 9 at 12.)  On December 27, 2021,

4   Defendant Campbell presided over the new hearing as the Senior Hearing Officer.  (*Id.*; ECF Nos.

5   63-6 at ¶ 3; 63-7.)  Campbell found Plaintiff guilty of the contraband charge and imposed losses of

6   time credits, work pay, and various privileges, as well as mandatory drug testing.  (ECF Nos. 63-6

7   at ¶ 6; 63-7.)  Plaintiff had received notice of the hearing and the reissued RVR 13 days before the

8   hearing, the opportunity to call witnesses (which he again did not do), a written explanation of the

9   reasons and evidence for the disciplinary decision, as well as the assistance and evaluations he had

10  received in his prior hearing.  (ECF Nos. 63-6 at ¶¶ 4-5; 63-7.)

11       On January 13, 2022, Plaintiff appealed Campbell's ruling in a "staff complaint."  (ECF

12  No. 9 at 12.)  On March 11, 2022, Bravo found Campbell committed an error under the applicable

13  regulations by calculating the start date for the penalties as of the reissued RVR instead of the

14  original RVR, and Bravo ordered the RVR be reissued again.  (*Id.*; ECF No. 63-6 at ¶ 8.)

15  Lieutenant Willingham (who is not a defendant) was the Senior Hearing Officer for the third

16  disciplinary hearing.  (ECF Nos. 63-8 at ¶ 4; 63-9.)  After noting "the preponderance of the

17  evidence suggest[ed]" Plaintiff "most likely" introduced contraband into the prison, Willingham

18  nonetheless found Plaintiff not guilty and dismissed the RVR "in the interests of justice" because

19  Plaintiff's mail "[most] likely should have [] been opened in [Plaintiff's] presence" under the

20  applicable prison regulations.  (ECF Nos. 63-8 at ¶ 4; 63-9 at 9.)

**DISCUSSION**

I.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

[3] The regulation, 15 Cal. Code. Regs. § 3144 (see ECF No. 69-3 at 13), provides in relevant part:
> Confidential mail will be opened and inspected for contraband in the presence of the inmate addressee. Inspecting correctional officials will not read any of the contents of the confidential mail. Confidential mail may be further inspected, for cause only.

1   matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of

2   the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

3   fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

4   nonmoving party.  *Id.*

5         The party moving for summary judgment bears the initial burden of identifying those

6   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

7   issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving

8   party has met this burden of production, the nonmoving party must go beyond the pleadings and,

9   by its own affidavits or discovery, set forth specific facts showing there is a genuine issue for trial.

10  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material

11  fact, the moving party wins.  *Id.*

12        At summary judgment, the judge must view the evidence in the light most favorable to the

13  nonmoving party.  *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014).  If more than one reasonable

14  inference can be drawn from undisputed facts, the trial court must credit the inference in favor of

15  the nonmoving party.  *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

16  II.   <u>Analysis</u>

17      1.   <u>Opening of Mail</u>

18        Plaintiff claims Defendant Pashilk violated his constitutional rights by opening his "legal

19  mail" outside of his presence.  "[P]risoners have a protected First Amendment interest in having

20  properly marked legal mail opened only in their presence."  *Hayes v. Idaho Correctional Center*,

21  849 F.3d 1204, 1211 (9th Cir. 2017).  Additionally, "prisoners have a Sixth Amendment right to

22  be present when legal mail related to a criminal matter is inspected."  *Mangiaracina v. Penzone*,

23  849 F.3d 1191, 1195 (9th Cir. 2017).  Non-legal mail, however, may be opened outside of the

24  presence of an inmate.  *Hayes*, 849 F.3d at 1211 (upholding dismissal of claims for opening of

25  non-legal mail).  "Legal mail" consists of correspondence between a prisoner and his lawyer.  *See*,

26  *e.g.*, *Mangiaracina*, 849 F.3d at 1193-94, 1196-97 (prohibiting opening "legal mail," i.e. letters

27  between inmate and his criminal lawyer outside of inmate's presence); *Nordstrom v. Ryan*, 762

28  F.3d 903, 907 (9th Cir. 2014) (holding prison officials could not read "legal mail," i.e., letter from

United States District Court
Northern District of California

inmate to his criminal lawyer); *cf. Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) ("mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail").

Here, no reasonable inference can be drawn that the mail Pashilk opened was "legal mail." Although the envelope purported to state it was "legal mail," the contents – a methamphetamine-infused blank tax form – undisputedly were not. There was no correspondence from Plaintiff's attorney or any other documents pertaining to any legal matter pertaining to Plaintiff or anyone else. While the envelope also purported to indicate the mail was sent by a lawyer, it is undisputed the lawyer did not send it, did not represent Plaintiff, and he and Plaintiff did not know each other. The Court is not aware of any authority that holds a false label and false return addressee may transform non-legal, and indeed illegal, contents of mail sent to a prisoner into "legal mail" warranting constitutional protection under the First or Sixth Amendment under *Hayes* or *Mangiaracina*.

*Hayes*, *Mangiaracina,* and *Nordstrom*, are readily distinguishable from the instant case. As noted, the "legal mail" in *Mangiaracina* and *Nordstrom* consisted of letters between the inmate and his lawyer. *See Mangiaracina*, 849 F.3d at 1193-94, 1196-97; *Nordstrom v. Ryan*, 762 F.3d at 907. In *Hayes*, the court assumed the allegations that two pieces of mail – one from a law firm representing the plaintiff and another that prison officials designated "legal mail" – were "legal mail" were true because the case was decided at the pleading stage. 849 F.3d at 1206-07 & n.1, 1207-08.[4] Here, the case is before the Court for summary judgment, and there is uncontradicted evidence that the mail sent to Plaintiff was not from a lawyer, did not pertain to any legal matter, and consisted of contraband.

Plaintiff argues summary judgment may not be granted because no one witnessed, and no video was taken of, Pashilk opening the envelope. Such additional evidence is not necessary to support a rational inference that Pashilk's declaration and his account in the RVR and at the disciplinary hearings were true. There is no evidence suggesting the methamphetamine-infused

---

[4] The court found two other pieces of mail not to be "legal mail" requiring constitutional protection: one from the courts, and the other was designated by prison officials as non-legal mail and Plaintiff did not allege facts contravening this designation. *Hayes*, 849 F.3d at 1211.

5

1 form was not in the envelope or the envelope contained anything else.  Plaintiff's speculation that

2 might have been the case does not create a triable factual question.  Plaintiff also argues Pashilk's

3 opening the mail outside of his presence violated 15 Cal. Code Regs. § 3144.  The violation of

4 state law is not actionable under 42 U.S.C. § 1983, however.  *See DeShaney v. Winnebago County*

5 *Social Servs. Dep't*, 489 U.S. 189, 201-03 (1989).[5]

6       As there are no triable issues of fact as to whether Pashilk violated Plaintiff's constitutional

7 rights in opening the mail outside of Plaintiff's presence, Plaintiff is entitled to summary judgment

8 on this claim.[6]

9       2.      <u>Disciplinary Hearings</u>

10       Plaintiff claims Defendants Feston and Campbell violated his constitutional rights at his

11 disciplinary hearings.  The Due Process Clause requires certain minimum procedural protections

12 in prison disciplinary proceedings when serious rules violations are alleged, the sanctions to be

13 applied implicate state statutes or regulations which narrowly restrict the power of prison officials

14 to impose them, and the sanctions are severe.  *Wolff v. McDonnell*, 418 U.S. 539, 556-57, 571-72

15 n.19 (1974); *see also Sandin v. Conner*, 515 U.S. 472, 477-87 (1995) (holding the revocation of

16 good-time credits against a prisoner as a result of disciplinary proceedings, for example, is subject

17 to *Wolff's* procedural protections if state statutes or regulations narrowly restrict the power of

18 prison officials to impose the deprivation, and the liberty in question is one of "real substance").

19       Assuming Plaintiff's disciplinary proceedings were subject to the due process protections

20 outlined in *Wolff*, the undisputed evidence establishes Plaintiff received all of the required

21 protections.  *Wolff* established five procedural requirements: (1) written notice of the charges; (2)

22 "at least a brief period of time after the notice, no less than 24 hours," before the hearing

23 commences; (3) "there must be a written statement by the factfinders as to the evidence relied on

---

[5] Plaintiff does not bring a state law claim.  (*See* ECF No. 9 at 13 (listing two causes of action, for "constitutional violation[s]"); *see also* ECF No. 69 at 21-24 (arguing violation of regulation established violation of First and Sixth Amendment).)  In any event, Plaintiff does not cite authority, and the Court is not aware of any, providing a private right of action for violating this regulation.

[6] In light of this conclusion, the Court need not reach Defendants' alternative argument for summary judgment on the grounds that Pashilk allegedly opened Plaintiff's "legal mail" outside of Plaintiff's presence on one occasion.

1 and reasons for the disciplinary action;" (4) "the inmate facing disciplinary proceedings should be
2 allowed to call witnesses and present documentary evidence in his defense when permitting him to
3 do so will not be unduly hazardous to institutional safety or correctional goals;"[7] and (5) aid from
4 a fellow inmate or staff where the inmate is illiterate or "the complexity of the issues makes it
5 unlikely that the inmate will be able to collect and present the evidence necessary for an adequate
6 comprehension of the case." 518 U.S. at 564-66, 570. In addition, there must be "any evidence
7 that could support the conclusion reached by the disciplinary board," *Superintendent v. Hill*, 472
8 U.S. 445, 455-56 (1985), and such evidence must bear "some indicia of reliability," *Cato v.*
9 *Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).

10 Here, the undisputed evidence shows Plaintiff received all of the procedural safeguards
11 required by *Wolff* – written notice more than 24 hours before the hearing, the opportunity to call
12 witnesses and present evidence, review of the evidence against him, a written explanation of the
13 findings and evidence relied upon to support them, and both a staff assistant and investigative
14 employee – at each of the disciplinary hearings conducted by Feston and Campbell.[8] (ECF Nos.
15 63-4 at ¶¶ 4-5; 63-5 at 2-7; 63-6 at ¶¶ 4-5; 63-7 at 2-7.) As for the evidentiary requirements of due
16 process, it is undisputed the guilty findings were supported by Pashilk's report, his testimony at
17 the hearings, photographs of the mail, and the positive forensic test results for methamphetamine.
18 (ECF No. 63-5 at 7, 63-7 at 7.) Plaintiff does not dispute this evidence met the evidentiary
19 threshold of due process under *Hill* and *Cato*, of "some" reliable evidence that Plaintiff introduced
20 illegal drugs into the prison system through the mail.

21 Plaintiff argues his right to due process was violated because he did not receive notice of
22 the charges, i.e. a copy of the RVR, until May 17, 2021, over 45 days after Pashilk opened the
23 mail, on April 1, 2021. (*See* ECF No. 69 at 27.) This circumstance does not violate any of the
24 procedural requirements of due process outlined in *Wolff*; instead, Plaintiff cites a prison

---

[7] "Similarly, if a prisoner is to be able to respond to evidence presented against him, as a general proposition he should be allowed to know what it is and to examine it, unless there is reason to the contrary." *Melnik v. Dzurenda*, 14 F.4th 981, 986, 990 (2021).
[8] Plaintiff received additional procedural safeguards such as assessments for any physical or mental disabilities, which were negative. (ECF Nos. 63-5 at 3-4; 63-7 at 3-4.)

1 operations manual requiring the inmate be served with an RVR within 15 days of when officials

2 discover the offense. (*See* ECF No. 69-1 at 9.)[9]  The Due Process Clause only requires prisoners

3 be afforded those procedures mandated by *Wolff* and its progeny; it does not require prison

4 officials comply with their own, more generous procedures. *Walker v. Sumner*, 14 F.3d 1415,

5 1419-20 (9th Cir. 1994).  Thus, the timing of Plaintiff's receipt of the RVR does not create a

6 triable issue as to whether Feston or Campbell violated his right to due process.

7 Plaintiff also argues Campbell "allowed and permitted subsequent information unrelated

8 data [sic] not used in the initial [RVR] to justify her decision for the excessive penalties." (*Id.* at

9 19:3-7.)  This argument appears to refer to the fact that on appeal of Campbell's decision, a prison

10 official found Campbell misapplied the applicable regulations by calculating the penalties as of the

11 date of the reissued RVR, not the original RVR. (*See* ECF No. 63-6 at ¶ 8).  As explained above,

12 the violation of state regulations cannot be the basis for a claim under 42 U.S.C. § 1983. *See*

13 *DeShaney*, 489 U.S. at 201-03 (Section 1983 claim may not be based upon a violation of state

14 law).

15 As there are no triable factual questions as to whether Feston and Campbell violated

16 Plaintiff's federal constitutional right to due process in the disciplinary hearings, they are entitled

17 to summary judgment on Plaintiff's claims.[10]

## CONCLUSION

19 For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

20 Plaintiff has informed the Court that he has changed his name, but he indicates that he

21 wishes to keep using the name Hilbert Thomas for purposes of this case.  He has moved for a

22 "decree" under Rule 79 of the Federal Rules of Civil Procedure.  A decree is unnecessary; it is

23 sufficient that he has informed the Court.  The motion is DENIED.

24 The clerk shall enter judgment and close the file.

---

[9] Pashilk received the forensic test results showing methamphetamine on May 13, 2021, which was four days before serving Plaintiff with the RVR. (ECF No. 63-5 at 7.)

[10] The Court does not reach Defendants' alternative argument that Plaintiff's due process rights were not violated because he ultimately received a third disciplinary hearing at which the charges and penalties were dismissed.

This order resolves docket numbers 63 and 78.

**IT IS SO ORDERED.**

Dated: January 2, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge